JOSEPH FRIEDENWALD, and others *vs.* WILLIAM H. SHIPLEY, Examiner.

*Construction of sec. 226 of Art. 3 of the Code of Public Local Laws, relating to Opening streets, &c., in Baltimore County—Proceedings of the Examiner—Excess of Jurisdiction by him—Jurisdiction in Equity.*

Where the law authorizes an appeal to the Circuit Court for the county by any person dissatisfied with the award for damages or assessment of benefits in the matter of condemning, opening, grading, and constructing a street, that Court on such appeal has exclusive and final jurisdiction to correct any errors in these respects, and a Court of equity cannot undertake the decision of matters within the scope of such appeal.

By section 226 of Article 3 of the Public Local Laws, relating to Baltimore County, the examiner, in condemning and opening a street, avenue, or alley, or portion thereof, is required to value such damages as may happen or arise therefrom "and to make an estimate of the probable cost of opening, grading, and construction of the same, and of the probable cost and expenses of the proceedings in the matter, including the *per diem* of the examiner, or the examiners, and to assess the gross amount of such damages, the probable cost of opening, grading, and construction, and the probable amount of cost and expenses of the proceedings in the matter, including the *per diem* of the examiner or the examiners, in such proportion as may be fair and equitable as benefits, upon all the lands in said county, which shall, in the opinion of the examiner or the examiners be benefited." The examiner is also required to make a statement of his proceedings, and an explanatory plat, and to afford an opportunity, by advertisement, for making corrections and alterations in the damages, estimates of probable cost of opening, grading, and construction, assessments for benefits, and all other matters contained in the statement; and, after making such alterations and corrections as he may deem just and proper, it is made his duty to deposit the statement and explanatory plat in the office of the county com-

Friedenwald, *et al. vs.* Shipley, Examiner.

missioners and to give notice of the same by advertisement; and any person dissatisfied with the award of damages or benefits, is given the right of appeal to the Circuit Court, at any time within thirty days after the first publication of the notice. HELD:

1st. That in proceedings under this section the examiner has no power to include in his estimate of cost of "opening, grading, and construction," a sum for the building of bridges, over railroad tracks.

2nd. That the statement required to be filed by the examiner will be defective, unless it contains the particulars making up the aggregate of the estimated cost of opening, grading, and constructing the particular street, avenue, or alley.

3rd. That the jurisdiction conferred upon the examiner by the statute is special and limited, and he must conform strictly to the authority thus given, or otherwise his proceedings will be null and void.

Where the examiner in his proceedings for opening a street under said section, includes in his estimate of the cost of opening, grading, and construction, the cost of two bridges over railroad tracks, and his statement does not show the particulars making up the aggregate of the estimated cost of the work, his proceedings are void, and the parties assessed for benefits can maintain a bill in equity for an injunction to restrain him from prosecuting suits against them for the recovery of the said benefits, and from attempting to enforce the payment of them by a sale of their property.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*William H. Dawson,* and *Albert Ritchie,* (with whom were *John I. Yellott,* and *George R. Willis,* on the brief,) for the appellants.

The plaintiffs do not seek to open here any questions that could be heard only on appeal. If the notices were sufficient, they are now shut out from such questions by the failure to appeal. But while they may thus be precluded from the question whether assessed too much or not, and from all questions that touch the mere regularity of the examiner's proceedings while acting within the scope of his authority, all matters which show that the assessments are void and that he acted outside the scope of his powers and without jurisdiction, are open. *Mayor, &c. of Baltimore vs. Porter,* 18 *Md.,* 284-301; *Mayor, &c. of Baltimore, et al. vs. Grand Lodge of I. O. O. F.,* 44 *Md.,* 436-445; *Page vs. Mayor, &c. of Balto.,* 34 *Md.,* 565; *Hazlehurst, et al. vs. Mayor & City Council, et al.,* 37 *Md.,* 199-220; *Holland vs. Mayor, &c. of Baltimore, et al.,* 11 *Md.,* 186; *Cooley on Taxation,* 528.

The examiner has included in the assessments about $18,000 for bridges. The county has a separate and specific system, or proceeding, for the four chief things connected with streets, viz: (1,) Opening and grading, Code of Public Local Laws, Art. 3, sec. 226; (2,) Paving, sec. 231; (3,) Sidewalks, secs. 243, 244; (4,) Bridges, sec. 205, &c., and sec. 240; and each work must follow its own provisions; the proceedings in each case are different; one cannot be included in the prosecution of another; nor could more than one be embraced in the same application.

There is no mention in the application of bridges, nor in the notices, and not a word in his return about these bridges; no plan, not a drawing, no estimate; no information or light whatever; the facts are all developed only by the testimony. He has no power to determine whether bridges shall be built, nor to determine their plan, nor to provide, contract, or assess for them.

The building of all bridges is under control of the County Commissioners. Sec. 205. They are to be built

Friedenwald, *et al. vs.* Shipley, Examiner.

only after application by inhabitants, and on the judgment of a special commission, approved by the County Commissioners, that public convenience requires it, and after full report of character, size, cost, &c.   Sec. 205.

If approved of, the County Commissioners are to advertise for proposals and award contract.   Sec. 205. The bridge superintendent is to propose plans for all new bridges, and he is to superintend the building of all new bridges.   Sec. 206.   Thus the law provides in careful detail for the erection of all bridges, by powers conferred on County Commissioners and superintendents.

Not only do the examiner's proceedings disclose nothing whatever about these bridges; he not only fails to include in his return any plans, specifications or drawings of these bridges, so that the people interested may know something of them, but the plans, &c. are not even formulated in his own mind; he cannot tell even now *what sort of bridges they are to be;* and so far as he has in his own mind now any definite ideas of plan, &c. in regard to them, he may *change his plans* to-morrow.   Nothing is of record, nothing on file, and there is nothing to prevent him from changing them; in fact, there is nothing in his proceedings or return to prevent him from changing his views and abandoning the bridges altogether.

*D. G. McIntosh,* (with whom was *Fielder C. Slingluff,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

Upon the application of certain property owners on Lancaster, Hudson and Eleventh streets in Baltimore County, the County Commissioners appointed William H. Shipley, examiner, to condemn, open, grade and construct said streets, so as to have a continuous thoroughfare from the eastern limits of Baltimore City to Scharr's lane in Baltimore County.   The examiner completed his

Friedenwald, *et al. vs.* Shipley, Examiner.

proceedings, and made return of them to the office of the County Commissioners. The summary of damages, benefits and expenses was as follows:

"SUMMARY.

Total amount of damages awarded for land taken for the bed of a thoroughfare, . $11,595 00

Estimate of the probable cost of the opening, grading and construction of the same, . . . . . . . . . . . . 29,923 00

Estimate of the probable cost and expenses of the proceedings in the matter, including the *per diem* of the examiner, 3,600 00

Gross amount of benefits to be assessed, . $45,118 00"

Friedenwald, and others who were assessed for benefits, filed a bill in equity against the examiner, alleging that his proceedings were utterly null and void, and praying for an injunction to restrain him from prosecuting suits against them for the recovery of said benefits, and from attempting to enforce the payment of them by a sale of their property. On final hearing the bill was dismissed, and the complainants appealed to this Court. The validity of the proceedings of the examiner was assailed on a number of grounds. He gave the notices required by law, by due publication in the proper newspapers. The law authorized an appeal to the Circuit Court for Baltimore County by any person dissatisfied with the award for damages, or assessment of benefits; and this Court on such appeal had exclusive and final jurisdiction to correct any errors in these respects. It is too well settled to admit of further discussion, that a Court of equity cannot undertake the decision of questions which the law has confided to another tribunal specially designated to adjudicate them. *Cumb. & Penna. R. R. Co.*

*vs. Penn. R. R. Co.,* 57 *Md.,* 267. We may, therefore, dismiss from our consideration all matters relating to the amounts of damages and benefits. But another objection was urged to the proceedings of the examiner. By the two hundred and twenty-sixth section of Article 3 of Public Local Laws, (relating to Baltimore County,) the examiner is required to "value such damages as may happen or arise from the condemnation and opening of said street, avenue or alley, or portion thereof, (meaning such as are to be opened,) and to make an estimate of the probable cost of opening, grading and construction of the same, and of the probable cost and expenses of the proceedings in the matter, including the *per diem* of the examiner or the examiners, and to assess the gross amount of such damages, the probable cost of opening, grading and construction, and the probable amount of cost and expenses of the proceedings in the matter, including the *per diem* of the examiner or the examiners, in such proportion as may be fair and equitable as benefits, upon all the lands in said county, which shall in the opinion of the examiner or the examiners be benefited." We quote the words of the law. He is directed to make a statement of his proceedings and an explanatory plat of the street, and of the property bounding and fronting on it, and also, if he deems it advisable, of the adjacent property. He is also directed to afford an opportunity, by advertisement, for making corrections and alterations in the damages, estimates of probable cost of opening, grading and construction, assessments for benefits, and all other matters contained in the statement; and after making such alterations and corrections as he deems just and proper, it is made his duty to deposit the statement and explanatory plat in the office of the County Commissioners, and to give notice of the same by advertisement. Any person dissatisfied with the award of damages or benefits may, at any time within thirty days

after the first publication of the notice, appeal to the Circuit Court; but if no appeal shall be taken within the time specified, it is made the duty of the County Commissioners to ratify and confirm the statement.

In the statement made by the examiner the "damages. awarded for land taken for the bed of a thoroughfare" are stated at $11,595; and the estimate of the probable cost of the opening, grading and construction of the same is stated at $29,923. The cost is stated in one gross sum, and no particulars are given. But the examiner being produced as a witness, testifies that in this estimate of cost of "opening, grading and construction," there is included the sum of $16,000 for the building of two bridges. These bridges are to cross railroad tracks at an elevation of twenty feet above the tracks. The building of bridges is a very different matter from "opening, grading and constructing a street." By the two hundred and fifth section of the Article we are considering, the building and repair of all bridges in Baltimore County are placed under the control of the County Commissioners. No bridge can be built or repaired unless they direct it; and the expense of building and repairing is to be paid by the county. But under this section no bridge can be built, except on the petition of twenty or more taxable inhabitants of the county, and the report of a board of examiners appointed by the County Commissioners consisting of one road commissioner of the neighborhood, one disinterested tax-payer to be named by the petitioners, and the bridge superintendent of the county. A speedier method is provided by the two hundred and fortieth section, when in the course of opening, grading and constructing a street, it is necessary to erect a bridge or culvert over any water-course. In this case, if the County Commissioners upon application made to them think that the public convenience requires the building of the bridge, they are directed to appropriate a sum

sufficient to build it, and no petition of tax-payers is required, nor any report of a board of examiners. As bridges are usually built over water-courses, the Legislature named such bridges by way of general description; but bridges may be necessary in other cases, as over chasms and ravines for instance, and it would be a narrow construction of the statute to deny to the Commissioners the power in such cases. The object of the Legislature in passing the section seems to have been, that in the case of opening streets the delays might be avoided, which were incident to proceedings under the two hundred and fifth section. The examiner undertook to provide the means of constructing two bridges and therein exceeded his powers. He also failed to fulfil the requirements of the statute in the mode of making his statement. This statement was deposited in the office of the County Commissioners for the inspection of all persons interested in it. Every one required to pay benefits had a right to know the particulars making up the aggregate of the estimated cost of opening, grading and constructing the street, so that he might appeal from the same, if he should consider them extravagant and unjust. No particulars are stated in this instance, and no one would suppose that under the general terms used: "Opening, grading and constructing" a street, it was intended to describe the building of two expensive bridges. And the incongruity will appear more striking, if we look at the figures in the statement. The whole cost is estimated at $29,923; of this amount $16,000 is for two bridges, one of them with a span of one hundred and ten feet, and the other with two spans of a hundred feet each; and the remainder, less than $14,000, is for constructing a street fifty-one hundred feet long. The statement was defective in that it did not .show matters of great importance to the parties charged, and which were necessary to enable them to defend their rights. Infor-

Friedenwald, *et al. vs.* Shipley, Examiner.

mation was withheld from them which would probably have induced them to appeal; at all events which was essential to an intelligent determination of the question, whether an appeal was necessary for their protection. It was essential to the validity of the proceeding that the statement should be made and deposited in the office of the County Commissioners, and that notice should be given by advertisement that it had been so deposited. But of what avail would the statement and advertisement be, if the statement did not disclose the matters vitally necessary to be known? A special and limited jurisdiction has been conferred by statute on the examiner, and he must conform strictly to the authority thus given, or otherwise his proceedings will be null and void. This was decided to be a universal rule in *Swann, et al. vs. Mayor, &c. of Cumberland*, 8 *Gill*, 154, and has never been questioned by our Courts. Many instances might be cited where it has been applied, especially in cases of opening streets. It is sufficient to mention *Henderson vs. Mayor, &c. of Baltimore, use of Eschbach*, 8 *Md.*, 352; *Holland vs. Mayor, &c. of Baltimore, et al.*, 11 *Md.*, 186, and *Mayor, &c. of Baltimore, et al. vs. Porter*, 18 *Md.*, 284.

In our opinion, for the reasons stated, the proceedings of the examiner were not within the jurisdiction conferred by the statute, and they must be declared void. We will, therefore, reverse the decree of the Circuit Court, and remand the cause, to the end that a decree may be passed in conformity with this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 28th April, 1891.)


Judges MILLER and FOWLER, dissented.

Friedenwald, *et al. vs.* Shipley, Examiner.

A motion was made on the 1st of May, 1891, by the appellee, for a re-hearing of the foregoing case. The motion was overruled. Judge BRYAN delivered the opinion of the Court as follows :

After the decision in this case a motion was made for a re-argument. We have carefully reconsidered the grounds of our opinion.

The notices given by the examiner were sufficient to enable him to commence his proceedings. But he was nevertheless obliged to observe strictly the statutory method, which was prescribed for the exercise of the special authority conferred on him. When a power is granted to do an act only in a particular way, any essential departure from this way renders the attempted act invalid. This would seem to be a very obvious deduction of reason. It is certainly an unbending rule of law. It is difficult to see how it can be inferred that the examiner's proceedings must be held valid, because they had a valid commencement. It is not so held in other cases of special and limited authority. For instance, where an attachment is sued out against a non-resident debtor, the affidavit and account must be duly filed as a preliminary to the issue of the attachment; but the other steps required by the statute must also be strictly observed; the short note must be filed "expressing the plaintiff's cause of action," and a copy must be sent with the writ to be set up at the Court house door. An omission of any of these particulars will defeat the jurisdiction. A very familiar instance of the strictness of the rule of law is shown in proceedings to sell land for taxes. It was said in *Polk vs. Rose, &c.,* 25 *Md.,* 159: "Each and every step, from the assessment of the property for taxation, to the consummation of the title by delivery of the deed to the purchaser, is a separate and independent fact. All of these facts from the beginning to the end of the proceeding must exist, and if any material link

in the chain of title is wanting, the whole is defective for want of sufficient authority to support it." See also many other cases. In *Thatcher, et al. vs. Powell, et al., Lessee,* 6 *Wheaton,* 119; Chief Justice MARSHALL, speaking of one of these sales said: "That no individual, or public officer can sell, and convey a good title to the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power, must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this Court." In the case in question the land had been sold by an order of Court, but the Chief Justice held that this did not affect the question of jurisdiction. He said: "The argument is, that the judgment, for these errors in the proceedings of the County Court, may be voidable, but is not void; that until it be reversed, it is capable of supporting those subsequent proceedings which were founded on it. We think otherwise. In summary proceedings, where a Court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction, ought to appear, in order to show that its proceedings are *coram judice.*" In *Shriver's Lessee vs. Lynn, et al.,* 2 *Howard,* 59, the Supreme Court of the United States considered the effect of a sale of land which had been ratified by the High Court of Chancery of Maryland. They say: "The Chancellor had jurisdiction of the cause as presented by the petition; and this being the case, no advantage can be taken of errors, however gross, when the record is used collaterally." But notwithstanding this declaration of the law, it was held that with reference to a portion of the land where the sale had been made under the supposed authority of a decree of the Court,

and ratified by the Chancellor, the jurisdiction did not exist, and the sale was utterly null and void. In *Williamson, et al. vs. Berry,* 8 *Howard,* 542, the Supreme Court consider quite fully the question of jurisdiction. Two brief extracts may be made from their opinion. "The point in *Cochran vs. Van Surlay,* and in this case is, whether the Chancellor did or did not, in a case for which he had jurisdiction for certain purposes, exceed the jurisdiction given to him for the special purposes of the case. Jurisdiction may be in the Court over the cause, but there may be an excess of jurisdiction asserted in its judgment. That was *Shriver's Case,* in 2 *Howard.*" "The operation of every judgment depends upon the jurisdiction of the Court to render it. Though there may be jurisdiction for certain purposes in a cause, that jurisdiction may be exceeded in the judgment." page 543.

The Circuit Court on appeal had jurisdiction to hear and decide all objections to the assessment of damages and benefits made by the examiner. And these questions cannot come before any other tribunal. A Court of equity cannot correct or amend the proceedings, or order them to be corrected or amended. Its jurisdiction is limited to the inquiry whether they are authorized by the special and limited powers of the examiner. If they are not within his legal competency they are simply void, and must be so declared. We think, for reasons stated in our former opinion, that they are fatally defective. There was an omission of an essential matter which was vital to the interests of the persons whose rights were involved. And moreover, the whole scheme of the opening and construction of the street was misconceived, it was conducted on an erroneous basis. The leading object seems to have been to build bridges over certain railroad tracks; and every step in the transaction appears to have been taken with reference to this end. The grade was raised so that the proposed street should pass over the

railroad tracks by means of bridges twenty feet above them. Hence it occurs, that the expense of condemning, opening, grading and constructing a street in the country less than a mile long, reaches the very large sum of forty-five thousand dollars and upwards. The examiner had no power to accomplish the proposed object, and everything done in furtherance of it was without the sanction of the law.

*Motion overruled.*

(Filed 18th June, 1891.)