# SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, A Body Corporate, Trustee.

## *vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Baltimore City: the Fallsway; delegation of authority to the Commission on City Plan, or Commissioners for Opening Streets; Chapter 110 of Acts of 1910; power of condemnation; assessments for benefits; notice; appeals from errors of Commissioners; when equity has no jurisdiction.*

Chapter 110 of the Acts of 1910, empowering the Mayor and City Council of Baltimore to construct the Fallsway, authorizes the delegation of the power to the "Commission on City Plan," and authorizes the conferring on said commission, by ordinance, the power to condemn and acquire by purchase, etc., the lands necessary for the work, and such other powers possessed by the Mayor and City Council relating to opening streets, etc.; such provisions contemplated that if the City should determine to commit such construction to the Commission on City Plan there should be an *express* delegation of authority for that purpose.                                             p. 527

An ordinance of estimates, in which there was merely award-ed the Commission on City Plan a certain sum for constructing the public highway on or near Jones' Falls, was not such a dele-gation of authority as contemplated by the Act.        p. 526

The fact that in such an ordinance of estimates the Commis-sion on City Plan was so named did not prevent the City from afterwards, by ordinance, committing the construction of the Fallsway to the Commissioners for Opening Streets.        p. 528

In such a case an assessment for benefits made by the Com-missioners for Opening Streets was not rendered void merely because in the first instance the Commission on City Plan had been so named by the Board of Estimates in connection with an appropriation for the Fallsway and had expended a small part of the fund.                              p. 528

If the Fallsway had been constructed under section 6 of the Baltimore City Charter, notice required by section 828 of the Charter would have been prerequisite to the valid assessment of any benefits for the opening of the highway.        p. 528

But as the Fallsway was constructed under the special author-ity of Chapter 110 of the Acts of 1910, and was independent of the requirements of section 6 of the Charter, there was no legal necessity of giving the notice provided for in section 6, as the Act of 1910 contained no such requirement.    pp. 530, 531

The power to assess for benefits was not granted by the stat-ute relating to the Fallsway, but it was one of the "other powers possessed" by the City under the Charter, which it was permit-ted by that Act to confer by ordinance upon the Commissioners.
                                                    p. 527

Where the Commissioners for Opening Streets are fully and validly empowered to conduct proceedings for the assessments of benefits, if they estimate benefits under a misconceived theory of valuation, the error is to be corrected through the appeal spe-cially provided for such purpose; but the whole proceeding is not to be declared void because of such error; and, in general, where such assessments are made in the exercise of a jurisdic-tion lawfully required and where a specific remedy has been afforded for errors by an appeal to another tribunal, a court of equity has no authority to interfere.        p. 532

Under section 31 of Article 5 of the Code of 1912, an appeal to the Court of Appeals may lie from an order refusing a preliminary injunction on an *ex parte* application.          p. 533

*Decided June 26th, 1913.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph L. Goldsmith* and *German H. H. Emory* (with whom was *Morris A. Soper,* on the brief), for the appellant.

*S. S. Field, The City Solicitor,* for the appellee.

URNER, J., delivered the opinion of the Court.

In the case of the *Philadelphia, Baltimore and Washington Railroad Company* v. *The Mayor and City Council of Baltimore, ante,* page 504, the validity of benefit assessments made by the Commissioners for Opening Streets in connection with the opening of a highway over Jones' Falls in Baltimore City was sustained as against the objections there under consideration. The present appeal is from an order refusing a preliminary injunction upon a bill of complaint which disputes upon other grounds the right of the Commissioners to make such assessments. It was held in the former case that while Ch. 110 of the Acts of 1910, p. 639, providing for the improvement, authorized the City to delegate the duty of opening the

new thoroughfare, known as the "Fallsway," to the Commission on City Plan, the Mayor and City Council had full power, under the co-existing provisions of the City Charter, to pass the ordinance then and now under inquiry, directing that this service be performed by the *Commissioners for Opening Streets.* It was also decided that property beneficially affected by the improvement was not relieved of liability to be assessed for benefits because of the creation of a fund by the Act of 1910 for the payment of the costs and expenses of the project. The bill in the present case charges in effect that the City actually availed itself of the right given by the Act to delegate the power and duty of opening the highway to the Commission on City Plan, which proceeded to exercise the authority thus conferred, and that having made such an election, and the Commission having acted upon it, the City was precluded from committing the work to a different agency. The ordinance is alleged to be invalid for the further reason that it was not preceded by the notice prescribed by section 828 of the City Charter (Acts of 1898, Chap. 123, p. 241, Art. 4, Public Local Laws). The objection is raised also that the proceedings of the Commissioners for Opening Streets are void because their assessments were made with a view to meeting the cost of construction work not proper to be considered in that connection, and were in excess of the amount for which they were authorized to assess benefits.

In reference to the first of the points thus submitted, the averment of the bill is that after the approval of the project by the voters of the City, as provided by Chapter 110 of the Acts of 1910, an ordinance was passed by the Mayor and City Council, known as the "Ordinance of Estimates for the year 1911," in which appeared the following allowance among the estimates for new improvements: "Commission on City Plan, to be taken from the Jones' Falls 1961 Loan; to opening, constructing and establishing a public highway over, along and near Jones' Falls, five hundred thousand

dollars ($500,000.00)," and that the Commission thus speci-
fied proceeded to exercise the powers vested in it by the Act
of 1910 and the ordinance just mentioned, and expended the
sum of $6,108.25 out of the funds thus appropriated. Upon
this allegation of facts, the bill advanced the theory of a
conclusive and irrevocable election by the City to delegate
the duty and power of opening the Fallsway to the Com-
mission on City Plan.

The Ordinance of Estimates to which the bill refers was
passed in pursuance of section 36 of the City Charter, which
provides that the Board of Estimates shall annually make
out three lists of moneys to be approved by the City Council
for the ensuing fiscal year, and that these lists, which include
one relating to new improvements, shall be embodied in an
ordinance, prepared by the Board, making the necessary
appropriations, which, after the publication of a prescribed
notice, shall be submitted to the City Council for passage.
It is evident that an ordinance of this character, whose only
function is to set apart the funds estimated for the specified
municipal purposes, is not such a measure as the Act of
1910 designed to be the medium for the delegation of the
powers it conferred. The Act provides, by section 2, that
"before proceeding to open and construct said highway, in-
cluding the acquiring of property adjacent thereto, the Mayor
and City Council of Baltimore shall by ordinance provide
therefor, and there shall be designated upon a proper plat the
property, landed or other, that is to be acquired in, along or
adjacent to said highway," and by section 3, that "The Mayor
and City Council of Baltimore is hereby authorized and em-
powered to delegate to the Commission known as the 'Com-
mission on City Plan' the duty and power of opening, con-
structing and establishing said highway, and to confer by
ordinance on said Commission the power to condemn and
acquire by purchase or condemnation the lands and property
mentioned in the last preceding section of this Act, and *such
other powers* possessed by said Mayor and City Council of

Baltimore, relating to the laying out, opening and construc-
tion of highways and acquiring property, landed or other,
adjacent thereto, as it may deem proper." These provisions
undoubtedly contemplated that if the City should determine
to commit the opening of the Fallsway to the Commission on
City Plan, there should be an *express* delegation of authority
for that purpose.

The power to *assess for benefits* was not granted by the
statute relating to the Fallsway, but was one of the "other
powers possessed" by the City under its charter which it was
permitted to "confer by ordinance" upon the Commission.
The Ordinance of Estimates does not refer to the Act of 1910
or purport to delegate or define any duties to be performed
or powers to be exercised in connection with the improvement.
It appears from the allegations of the bill that the ordinance
required by section 2 of the Act of 1910 to be passed prelim-
inary to any proceedings for the opening and construction of
the highway was approved February 9, 1912, more than a
year subsequent to the Ordiance of Estimates for 1911. In
the meantime, as the bill shows, an Ordinance of Estimates
for 1912 had been enacted in which an allowance of $500,-
000.00 was made to the *Commissioners for Opening Streets*
to be used "For opening, constructing and establishing a pub-
lic highway over, along and near Jones' Falls." The first
of these ordinances of estimates doubtless referred to the Com-
mission on City Plan in the expectation that the authority to
open the Fallsway would be given to that body. But it mani-
festly did not undertake by its own terms to invest the Com-
mission with the necessary powers. To accomplish such a
result further and specific action by the City was required.
No such action was taken in relation to the Commission on
City Plan, but by the ordinance of February 9, 1912 pro-
vision was made for the highway, as intended by the Act of
1910, and express direction was given that it be opened by
the Commission for Opening Streets in accordance with the
Act and the City Charter. If, therefore, it be assumed that

an authorization to perform this service would be final and irrevocable if once made to the agency named in the statute, we are of the opinion that such a delegation was not effected by the Ordinance of Estimates in which that agency was mentioned. There is no principle of election, applicable to the case made by the bill, which would bind the municipality to confer upon the Commission on City Plan the power to open the Fallsway merely because the selection of that body for the work had been anticipated in an ordinance whose sole object was to make appropriations, and because part of the fund thus made available had been expended by the Commission. No prejudice to the complainant or the public has been alleged as a consequence of the course pursued by the City in the exercise of the powers granted by the Act of 1910 and by the general provisions of its charter with respect to this improvement. The objection to the assessments on the ground we have thus considered is clearly not sustainable.

The question next to be decided is whether the notice prescribed by section 828 of the City Charter was an essential preliminary to the ordinance under which the Commissioners for Opening Streets made the controverted assessments. That section provided that before the Mayor and City Council "shall pass any ordinance under section 6 of this Article, paragraph, 'Streets, Bridges and Highways,' relating to the laying out, opening, extending, widening, straightening or closing up, in whole or in part, of any street, square, lane or alley within Baltimore City, notice shall be given by advertisement published once a week for six successive weeks in two of the daily newspapers in the said City, that application shall be made for the passage of such ordinance * * *." If the ordinance providing for the Fallsway is to be regarded as having been passed under section 6 of the Charter, the notice prescribed by section 828 was unquestionably a prerequisite. By the paragraph of section 6 to which section 828 refers power is given to the Mayor and City Council "to provide for laying out, opening, extending, widening,

straightening or closing up, in whole or in part, any street, square, lane or alley within the bounds of said City, which in its opinion the public welfare or convenience may require. To provide for ascertaining whether any, and what amount in value, of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements, within or adjacent to said City, for which said owner or possessor ought to be compensated or ought to pay a compensation, and to provide for assessing or levying, either generally on the whole assessable property of said City, or specially on the property of persons benefited, the whole or any part of the damages and expenses which it shall ascertain will be incurred in locating, opening, extending, widening, straightening or closing up the whole or any part of any street, square, lane or alley in said City." There are other provisions in this subdivision of the Charter, but they need not be quoted.

The ordinance of February 9, 1912, under which the Fallsway was opened, is entitled "An Ordinance to condemn and open in pursuance of Chapter 110 of the Acts of 1910 of the General Assembly of Maryland a highway over and along Jones' Falls," etc. It authorized and directed the Commissioners for Opening Streets to condemn and open the thoroughfare in pursuance of that Act, and provided that their proceedings should be in accordance with the Act of 1910 and all such provisions of the City Charter as were applicable. By section 172 of the Charter the Commissioners for Opening Streets were "charged with the duty of opening, extending, widening, straightening or closing any street, lane, alley or part thereof, situated in Baltimore City, whenever the same shall have been directed by ordinance to be done, and shall perform such other duties as the Mayor and City Council of Baltimore may by ordinance prescribe." Section 175 provided that "Whenever the Mayor and City Council of Baltimore shall hereafter by ordinance direct the Commissioners for Opening Streets to lay out, open, extend,

widen, straighten or close up, in whole or in part, any street, square, lane or alley, within the bounds of this City, the said Commissioners, having given the notice required. by law of their first meeting to execute the same, shall meet at the time and place mentioned in said notice, and from time to time thereafter, as may be necessary, to exercise the powers and perform the duties required of them by said ordinance, and shall ascertain whether any and what amount of value in damages will thereby be caused to the owner of any right or interest in any ground or improvements within or adjacent to the City of Baltimore, for which, taking into consideration all advantages and disadvantages, such owner ought to be compensated; and the said Commissioners having ascertained the whole amount of damages for which compensation ought to be awarded, as aforesaid, and having added thereto an estimate of the probable amount of expenses which will be incurred by them in the performance of the duties required by them, as aforesaid, and also of the expenses incurred by the City Register by reason of said proceedings, shall proceed to assess all the ground and improvements within and adjacent to the City, the owners of which, as such, the said Commissioners shall decide and deem to be directly benefited by accomplishing the object authorized in the ordinance aforesaid."

It thus appears that the assessments of which the bill complains were not imposed in pursuance of an ordinance passed under section 6 of the Charter. The authority of the City to open the Fallsway and the powers of the Commissioners for Opening Streets to assess the benefits in question existed independently of that section under separate and specific provisions. The ordinance providing for this improvement not only omitted any allusion to section 6, but referred expressly to the Act of 1910 as the source of the power which the City was proposing to exercise through one of its established agencies. There was no attempt in the ordinance to provide, within the purview of section 6, for the ascertainment of

either damages or benefits, but the Commissioners for Opening Streets were simply directed to perform the duties enjoined upon them by existing provisions of the City Charter. The conditions, therefore, under which the notice mentioned in section 828 is requisite, are not present in this proceeding. There was no legal necessity apart from that section for any notice preliminary to the passage of the ordinance, and the Act of 1910, in pursuance of which the City acted, contained no such requirement.

The remaining objection stated in the bill is that the proceedings of the Commissioners for Opening Streets are null and void because their assessments for benefits included elements and estimates not recognized by law.   This amounts to a contention that the assessments are irregular and excessive.   For such an erroneous exercise of authority the party aggrieved has an adequate remedy by direct appeal from the action of the Commissioners.   By section 179 of the City Charter it is provided that any party dissatisfied with the assessment of damages or benefits may within thirty days appeal to the Baltimore City Court, which is given full power to hear and determine the question thus presented.   The appellant is given the right to have a jury summoned and empanneled "to ascertain and decide on the amount of damages or benefits, under the direction of the Court."   It is further provided that the Court "shall not reject or set aside the record of the proceedings of the said Commissioners for any defect or omission in either form or substance, but shall amend or supply all such defects and omissions, and increase or reduce the amount of damages and benefits assessed, and alter, modify and correct the said return of proceedings, in all or any of its parts, as the said Court shall deem just and proper."

In *Wannenwetsch* v. *Baltimore City,* 111 Md. 39, it is said, in the opinion by JUDGE BURKE, that: "Where a special and limited tribunal acts within its jurisdiction, and an appeal is provided by the statute to another tribunal, in

which their action may be reviewed, mere errors, mistakes of judgment or irregularities in their proceedings do not form a foundation for a bill in equity. *Methodist Church* v. *Baltimore City,* 6 Gill, 391; *Hazelhurst* v. *Baltimore,* 37 Md. 220; *Page* v. *Baltimore,* 34 Md. 558." The objection in the *Wannenwetsch case* was that the Commissioners published in only one English newspaper certain notices necessary to be given in the course of their proceedings instead of making the publication in two such newspapers as required by law. It was held that the notices were consequently insufficient, but that as the *ordinance* was valid, and the Commissioners acquired jurisdiction in the premises and acted within its limits, any errors, defects or irregularities in the exercise of that authority could have been corrected by an appeal to the Baltimore City Court, as provided by the ordinance, and that a Court of Equity had no power to intervene. The decision thus rendered and those to which it referred are conclusive of the question we have now to determine. The Commissioners in this case were fully and validly empowered to conduct the proceedings in the course of which they made the assessments here sought to be annulled, and if they estimated the benefits upon a misconceived theory of valuation, the error thus committed is subject to correction through the appeal specially provided for that purpose. There is certainly no reason to declare the whole proceeding void because the Commissioners may have reached and reported a mistaken conclusion. It being clear upon the averments of the bill that the assessments complained of were made in the exercise of a jurisdiction lawfully acquired, and a specific remedy having been afforded for the alleged grievance by an appeal to another tribunal, a Court of Equity has no authority to decide the issue.

The case of *Friedenwald* v. *Shipley,* 74 Md. 225, was cited in support of the appellant's contention. In referring to that case JUDGE BURKE said in *Wannenwetsch* v. *Baltimore, supra,* "there is nothing in the decision in the *Friedenwald*

*case* in conflict with the principles we have stated.    The broad language used in some portions of the opinion in that case must be read in connection with the precise questions which the Court had under consideration.    What was actually decided in that case is this: first, that the examiner had *exceeded* his authority in a most material respect, viz, in estimating for the cost of building two bridges across the tracks of the Philadelphia, Wilmington and Baltimore Railroad Company; and, secondly, that the statement of damages, benefits and expenses filed by him was so framed as to mislead persons interested.    The Court found as a fact that 'information was withheld from them which would probably have induced them to appeal; at all events which was essential to an intelligent determination of the question whether an appeal was necessary for their protection.' "    In the present case there is no such combination of prejudicial conditions, and we find no occasion to exempt it from the operation of the general principle so clearly stated in the *Wannenwetsch and other cases* cited.

There was a motion to dismiss the appeal on the ground that the order from which it is taken was in reality a *pro forma* ruling.    The appeal is from an order refusing a preliminary injunction on an *ex parte* application.    An appeal to this Court from such an order is permitted by section 31 of Article 5 of the Code; *C. & P. Telephone Company* v. *Baltimore City,* 89 Md. 707; and the record discloses no circumstances which can be held to affect the right thus afforded.

*Order affirmed, with costs.*